ISSUED #513836

**Kerry J. Shepherd, WSBA No. 19070**
**Matthew A. Levin, WSBA No. 31011**
MARKOWITZ, HERBOLD, GLADE
  & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR  97204-3730
Tel: (503) 295-3085
Fax: (503) 323-9105
KerryShepherd@MHGM.com
MattLevin@MHGM.com

Of Attorneys for Plaintiff



ENTERED _____ LODGED
_____ RECEIVED

AUG 15 2005

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **BYRON BOYD,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED TRANSPORTATION UNION INSURANCE ASSOCIATION, UNITED TRANSPORTATION UNION PENSION ADMINISTRATIVE COMMITTEE, PAUL THOMPSON and RICK MARCEAU**<br><br>Defendants. | NO. C05-1413 JLR<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL**<br><br>(ERISA, Breach of Fiduciary Duty)<br><br>05-CV-01413-CMP |

For his complaint, plaintiff Byron Boyd ("Boyd") alleges as follows:

### JURISDICTION

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 (federal question), which provides for original jurisdiction for actions arising under 29 USC § 1132.  Boyd also contends the Court has jurisdiction of this matter based on diversity of citizenship as set forth in 28 USC §1332(a)(1).

**Page 1 -  COMPLAINT and DEMAND FOR JURY TRIAL**

## VENUE

2.      Venue is proper in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1132(a)(2), in which jurisdiction all defendants regularly conduct business.

## PARTIES

3.      Plaintiff, Byron Boyd, was an employee of the United Transportation Union (the "UTU") for more than 31 years. Boyd also served as President of the UTU from 2001 to 2004.

4.      Defendant United Transportation Union Insurance Association (the "UTUIA") is the insurer of the Pension Plan for the United Transportation Union.

5.      Defendant UTU Pension Administrative Committee is an executive body charged with making decisions regarding the UTU Pension Plan. The UTU Pension Administrative Committee is the plan administrator of the Pension Plan for the United Transportation Union.

6.      Defendant Paul Thompson is an officer of the UTU. Thompson served as the Assistant President of the UTU from 2001 to 2004. In 2004, Thompson became President of the UTU. Thompson is also a member of the UTU Pension Administrative Committee.

7.      Defendant Rick L. Marceau is the current Assistant President of the UTU. Marceau is also a member of the UTU Pension Administrative Committee.

## FIRST CLAIM FOR RELIEF
## (ERISA)

8.      Plaintiff hereby re-incorporates and re-alleges paragraph 1-7 above.

9.      Pursuant to the terms of his employment, Boyd was provided with a Pension Plan ("the Plan") for the UTU. A copy of the Plan is attached as Exhibit A.

10.     Pursuant to the terms of the Plan, Boyd was entitled to retirement benefits, including disability retirement.

**Page 2 - COMPLAINT and DEMAND FOR JURY TRIAL**

11.     The Plan specifically provided that Boyd would be eligible to receive a Disability Retirement Benefit if he had completed ten (10) years of service and became disabled, provided that the disability was not due to a deliberate self-inflicted injury or an injury incurred while engaged in a willful criminal enterprise.

12.     The UTU also provided Boyd with a summary description of the Plan dated July 1, 2001. A copy of the Summary Plan Description of Pension Plan for United Transportation Union is attached as Exhibit B.

13.     The Summary Plan described Boyd's entitlement to a disability retirement as follows: "You will be entitled to receive a Disability Retirement Benefit if you have completed at least 10 Years of Service and you become disabled, provided that your disability is not due to a deliberate self-inflicted injury or incurred while you were engaged in a willful criminal enterprise."

14.     Boyd began his employment with the UTU in 1969. In March of 2004, Boyd ceased working for the UTU at the recommendation of his medical providers and at the direction of the UTU based on his medical condition.

15.     In early March of 2004, Boyd's medical providers certified that his medical condition had resulted in his inability to perform the duties of his position and recommended that he be certified for disability benefits.

16.     At around the same time, the UTU determined in a letter dated March 10, 2004, that Boyd was unable to continue in his duties as UTU President and authorized that he receive a disability retirement.

17.     Specifically, UTU International President Paul C. Thompson stated that, "in view of your continuing medical problems, your inability to perform all the duties of your job, and the recommendation of your treating physician, it is with regret that I must inform you that you are medically disqualified from your position as President of the

Page 3 - COMPLAINT and DEMAND FOR JURY TRIAL

United Transportation Union, and may no longer perform your job duties effective March 10, 2004." A copy of this letter is attached as Exhibit C.

18.     Thereafter, Boyd completed an application for disability benefits. Boyd supported his application for disability benefits with competent medical evidence, records and reports.

19.     On March 25, 2004, Boyd received a letter from the Railroad Retirement Board stating that it had determined that he met the requirements for a disability annuity. As a result, the Railroad Retirement Board informed Boyd that his annuity would begin on or about September 1, 2004. A copy of this letter is attached as Exhibit D.

20.     On October 4, 2004, Boyd received a Railroad Retirement Award Notice establishing his entitlement to disability retirement. The award notice specifically stated that, "[t]his certifies that you are entitled to received a disability annuity under the Railroad Retirement Act." The annuity was established effective September 1, 2004, and was to be paid at a rate of $3,250.51. A copy of the Railroad Retirement Award Notice is attached as Exhibit E.

21.     Despite the medical evidence provided by Boyd, the determination of the Railroad Retirement Board stating that he met the requirements for a disability annuity, as well as the Social Security Administration's certification of his disability, Boyd was denied his disability retirement benefits under the terms of the Plan.

22.     On November 11, 2004, Boyd was informed that he did not qualify for benefits under the terms of the Plan. A copy of this decision is attached as Exhibit F.

23.     Thereafter, on November 18, 2004, Boyd filed a timely appeal from this decision with the UTU. Boyd sought that the UTU Pension Administrative Committee reconsider his application for a disability pension and again provided competent medical evidence related to his entitlement to disability retirement. A copy of Boyd's appeal is attached as Exhibit G.

Page 4 - **COMPLAINT and DEMAND FOR JURY TRIAL**

24.     The UTU informed Boyd on January 13, 2005 that the Pension Administrative Committee had received Boyd's letter seeking reconsideration, and that it was again denying him benefits under the terms of the Plan. A copy of the Committee Minutes are attached as Exhibit H.

25.     Boyd has provided to the UTU competent medical evidence from his treating doctors establishing he is disabled and entitled to disability retirement. Pursuant to the terms of the Plan, the determinations of the Railroad Retirement Board and the Social Security Administration are binding on the Plan.

26.     Boyd has fulfilled his responsibilities under the terms of the Plan by submitting competent evidence to establish that he was entitled to disability benefits.

27.     Defendant's denial of disability benefits to Boyd was arbitrary and capricious. In addition, the individuals responsible for denying Boyd's disability benefits made this decision while operating in the face of numerous conflicts of interest. As a result, Boyd is entitled to *de novo* review by this Court of the decision to deny his disability retirement benefits.

28.     Pursuant to 29 U.S.C. § 1132(a), plaintiff alleges he is entitled to relief for benefits wrongly denied him under the disability retirement benefits terms of the Plan.

29.     The Plan is an employee welfare benefit plan as defined by 29 U.S.C. § 1002.

30.     Plaintiff is a participant in the Plan as defined by 29 U.S.C. § 1002.

31.     Plaintiff's disability retirement benefits were wrongly denied as of November 11, 2004.

32.     As a result of defendant's said failure to provide Boyd his disability retirement benefits, Boyd is entitled to recover lost benefits in the amount of not less than $356,000, costs, attorney fees as provided by law, and any other relief deemed appropriate by the Court.

**Page 5 - COMPLAINT and DEMAND FOR JURY TRIAL**

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duties - ERISA)

33.     Paragraphs 1 through 32 are re-alleged.

34.     As the administrator of the UTU Pension Plan, the UTUIA, the UTU
Pension Administrative Committee and defendants Thompson and Marceau had fiduciary
duties to its members, including Boyd, to administer the terms of the Plan in a fair and
even-handed manner and without conflicts of interest.

35.     As members of the UTU Pension Administrative Committee, defendants
Thompson and Marceau owed fiduciary duties to its members, including Boyd, to
administer the terms of the UTU Pension plan fairly and without conflicts of interest.

36.     Defendants breached their fiduciary duties to Boyd when they
unreasonably denied him his Disability Benefits, despite the express terms of the Plan.

37.     Defendants further breached their fiduciary duties owed to Boyd by
unreasonably denying Boyd's disability benefits as a result of their own conflicts of
interest.

38.     As the result of defendants' breach of fiduciary duty, Boyd has suffered
harm in an amount to be proven at trial, including the value of his disability benefits, his
attorney fees, prejudgment interest, and other damages including consequential damages
arising from defendants' conduct.

WHEREFORE, plaintiff respectfully requests judgment as follows:

1.     Damages for failure to provide Boyd disability retirement benefits owed to
plaintiff under the policy, plus interest, including pre-judgment interest, in an amount to
be proven at trial, but not less than $356,000;

2.     Damages for defendants' breach of fiduciary duty, including the value of
Boyd's disability benefits, attorney fees, prejudgment interest, and other damages
including consequential damages arising from defendants' conduct;

3.     For the costs of suit incurred herein;

### Page 6 - COMPLAINT and DEMAND FOR JURY TRIAL

4.    For attorney fees incurred for the purpose of obtaining benefits under the policy in a sum to be determined by the Court upon post-trial motion; and

5.    For other such other and further relief that the Court deems proper.

DATED this 12th day of August, 2005.

MARKOWITZ, HERBOLD, GLADE
& MEHLHAF, P.C.

By:
Kerry J. Shepherd, WSBA No. 19070
Of Attorneys for Plaintiff

BOYD\88539