UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BYRON BOYD,

    Plaintiff,

v.

UNITED TRANSPORTATION UNION INSURANCE ASSOCIATION, et al.,

    Defendants.

CASE NO. C05-1413JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants (Dkt. # 15). The court has considered the papers filed in support and in opposition of the motion and finds the matter appropriate for disposition on the basis of the parties' briefing and without oral argument. For the reasons stated below, the court GRANTS in part and DENIES in part Defendants' motion.

## II. BACKGROUND

Plaintiff Byron Boyd is a former officer and member of the United Transportation Union ("UTU"). On September 12, 2003, a grand jury in the Southern District of Texas indicted Mr. Boyd for participation in several crimes including racketeering to commit mail and wire fraud, transportation in aid of racketeering, commercial bribery, and

ORDER – 1

embezzlement – all stemming from his service as a union official or made possible by virtue of his position within the UTU.[1] On March 11, 2004, Mr. Boyd pled guilty to the above named crimes in Count Two of his indictment for criminal activities spanning between 1994 and August of 2003. Defs.' Mot., Ex. 1.

On February 18, 2003, Mr. Boyd's doctor, Dr. Karton, noted in his chart that Mr. Boyd was considering leaving work because excessive stress was having a "major impact" on his quality of life and his ability to exercise. Defs.' Mot., Ex. 4.[2] In March, Dr. Karton wrote two letters to the UTU documenting Mr. Boyd's disability and stating that work-related stress and travel prevented him from living a healthy lifestyle that would keep his health condition under control. Defs.' Mot., Exs. 3, 5. Upon receipt of the letters, UTU President Paul Thompson wrote to Mr. Boyd instructing him to leave UTU because his disability was preventing him from fulfilling his job requirements. Pl.'s Compl., Ex. C. In that letter, Mr. Thompson recommended that Mr. Boyd contact the Railroad Retirement Board ("RRB") about qualifying for disability under the Railroad Retirement Act. The RRB granted disability status as of March 10, 2004, with payment to begin on September 1, 2004. Pl.'s Compl., Ex. D.

At some point thereafter, Mr. Boyd also applied for disability benefits under the UTU Pension Plan ("the Plan"). The RRB's determination of disability is conclusive

---

[1] Although it is not cited in the complaint, the parties do not contest judicial notice of Mr. Boyd's guilty plea. Judicial notice of public records is permissible on a motion to dismiss. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

[2] The court considers the medical charts and letters attached to the Defendants' Rule 12(b)(6) motion without converting the motion to a summary judgment motion. Fed. R. Civ. P. 12(b). Paragraphs 15 and 18 of the complaint reference the doctor certifications and the "competent medical evidence" submitted to the Committee. On a motion to dismiss, the court may consider documents on which the complaint necessarily relies, so long as the parties do not contest authenticity. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (affirming district court's reliance on plan document in ERISA case, not attached to plaintiff's complaint).

ORDER – 2

evidence that a disability exists under the Plan. Pl.'s Compl., Ex. A, Plan at 4. On November 11, 2004, however, the UTU Pension Administrative Committee ("the Committee") rejected Mr. Boyd's claim for full disability benefits because of his criminal conviction and instead, granted Mr. Boyd a lesser amount of early retirement benefits in the form of a lump sum. Pl.'s Compl., Ex. F. The Committee based the rejection on its review of the following Plan provision:

> Disability Termination: (a) A Participant shall be eligible for a Disability Retirement as defined in Section 4.04 if he has incurred, through some unavoidable cause, a total and permanent Disability as defined in Article I. Disability shall be deemed to have resulted from an unavoidable cause *unless it was contracted, suffered, or incurred while the Participant was engaged in a willful criminal enterprise* or resulted from a deliberate self-inflicted injury.

Pl.'s Compl., Ex. A, Plan at 38 ("Section 9.04") (emphasis added). On November 18, 2004, Mr. Boyd appealed the Committee's decision in writing through his attorney. Pl.'s Compl., Ex. G. On January 13, 2005, the Committee rejected Mr. Boyd's appeal and again denied him disability benefits. Pl.'s Compl., Ex. H.

Mr. Boyd filed this suit against the Committee, UTU President Paul Thompson and UTU Assistant President Rick Marceau as members of the Committee, and the UTU Insurance Association as the insurer of the pension plan. In his complaint, Mr. Boyd alleges two claims under § 1332(a) of the Employee Retirement Investment Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq*. His first claim alleges that the Committee's decision was arbitrary and capricious, and that he is entitled to benefits under the terms of his disability retirement plan. His second claim alleges that individual members of the Committee breached their fiduciary duties by rendering the decision under a conflict of interest. As to his second claim, Mr. Boyd seeks interest, consequential damages, and attorneys' fees in addition to disability benefits. Defendants

ORDER – 3

now move the court to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").

## III.  ANALYSIS

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-8 (9th Cir. 1996). Dismissal for failure to state a claim should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (internal quotations and citations omitted). Although the court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal citations omitted).

**A.     Mr. Boyd States a Claim Under 29 U.S.C. § 1132(a)(1)(B).**

Mr. Boyd claims that the Committee's decision denying him benefits was arbitrary and capricious, in violation of 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)").[3] Although ERISA is silent as to the appropriate standard of review, federal courts adopt the arbitrary and capricious standard where the plan in question expressly provides a fiduciary (here, the Committee)[4] with discretion to determine eligibility and interpret plan provisions. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109, 115 (1989).

---

[3] Section 1132(a)(1)(B) states, in relevant part: "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[4] The parties do not dispute that the Plan grants such discretion to the Committee.

ORDER – 4

Where a fiduciary's decision is based on an erroneous application of the law, such an error is an abuse of discretion. See Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1146 (9th Cir. 2002) (holding that administrator abused its discretion in denying benefits where the decision turned on an unfavorable construction of a document summarizing the retirement plan rather than the unambiguous language of the actual plan provision). If, however, the plaintiff shows that the fiduciary has a serious conflict of interest affecting the decision, the district court will apply de novo review. Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875-76 (9th Cir. 2003).

Defendants primarily contend that, regardless of this court's standard of review, a plain reading of Section 9.04 of the Plan required the Committee to reject Mr. Boyd's claim. Mr. Boyd contends that the Committee construed the wrong document altogether. That is, Mr. Boyd argues that the language of the Summary Plan Document ("the SPD"), a summary provided to employees to clarify and explain their benefits, should control the Committee's decision whether to grant or deny disability benefits because the language in the SPD is more favorable to the employee in this instance than the language of Section 9.04.

When plan documents, such as an SPD, contain provisions that conflict with the plan as to what actions or events may affect the participant's right to receive benefits, courts apply the provision more favorable to the employee in order to place the burden of ambiguity on the party who drafted the conflicting documents. See Bergt, 293 F.3d at 1145-46. The Defendants do not dispute this authority; rather, they argue that the Plan

ORDER – 5

and the SPD are materially the same and that, although the Committee did not expressly refer to the document, it considered the relevant SPD language on appeal.[5]

The Plan language states that a disability will be deemed a result of an unavoidable cause unless it is "contracted, suffered or incurred" while the Plan participant is engaged in a willful criminal enterprise. By contrast, the SPD mentions only disabilities "incurred" while the participant is engaged in the enterprise. Pl.'s Compl., Ex. B. Mr. Boyd contends that the former is less favorable to him because it allowed the Committee to select the narrowest term from a menu of options (i.e., contracted, suffered *or* incurred) in denying him benefits. The Committee decision reads, in relevant part:

> Mr. Boyd *probably contracted* and/or incurred the condition(s) . . . while he was engaged in a willful criminal enterprise. However, [medical] records quite *clearly indicate* that Mr. Boyd suffered such condition(s) while he was engaged in a willful criminal enterprise according to the common and everyday meaning of that term. Since "contracted, suffered, or incurred" are stated in the disjunctive in the exception, if even one applies, the exception operates. From the records, Mr. Boyd plainly "suffered," in the sense of "experienced" and/or "endured" the condition(s) resulting in his disability while engaged in a willful criminal enterprise. For that reason, he is not entitled to a disability retirement under the Plan.

Pl.'s Compl., Ex. H (emphasis added). The Committee, then, expressly acknowledged a distinction between the words "suffered" and "incurred," finding the former "plainly" and "clearly" established while passing on a construction of the latter term.

Without reaching the merits of Mr. Boyd's claim for disability benefits, the court concludes that, as a matter of law, the distinction between the Plan language and the SPD constitutes a material difference. The Committee therefore erred in failing to construe Mr. Boyd's claim under the more favorable of the two documents, the SPD. <u>Bergt</u>, 293

---

[5]In the alternative, the Defendants argue that Mr. Boyd cannot proceed on this theory because he did not raise it in the appeal or the original complaint. The court disagrees. In his appeal, Mr. Boyd cited the rule that the SPD should control if the terms of the SPD and the Plan conflict. Pl.'s Compl., Ex. G.

ORDER – 6

F.3d at 1145-46. An example illustrates how the SPD is more favorable. In order to reach the conclusion that Mr. Boyd "suffered" his disability during the period in which he engaged in crime, the Committee necessarily found that Mr. Boyd was disabled and working, free of crime, for a period of at least seven months before his termination. The logical conclusion from the Committee decision is that the Committee would deny benefits to a disabled employee who completes a crime at any point after the onset of the disability but before the disability renders him unable to work, whereas an able-bodied employee who completes the same crime on the same day will receive benefits for an injury occurring the following morning. The plain language of the SPD gives no notice of this potential pitfall to the Plan participants. Thus, the court concludes that the SPD should have controlled the Committee's decision, and a ruling based exclusively on Plan language was an abuse of the Committee's discretion. Accordingly, the court denies Defendants' motion as to Mr. Boyd's first claim.

**B.   Mr. Boyd Fails to State a Separate Cause of Action Under Section 1132(a)(2) or 1132(a)(3).**

Mr. Boyd also raises a claim under 29 U.S.C. § 1132(a)(2) ("Section 1132(a)(2)") in which he alleges that several members of the Committee rendered the decision unreasonably and under a conflict of interest in violation of their fiduciary duties to administer the Plan fairly. The Defendants move to dismiss this claim on the grounds that Mr. Boyd has failed to allege specific facts showing a conflict of interest,[6] and

---

[6]The Defendants assert that Mr. Boyd may not present new evidence at trial to show a conflict of interest if such evidence was not part of the record on appeal to the Committee. The court disagrees. The court may only evaluate the reasonableness of a fiduciary administrator's decision based upon the record from which the decision was made; conflicts of interest, however, exist apart from the substance of that decision, and proof of a conflict may be introduced to show that it influenced the decision. Tremain v. Bell Indus., Inc., 196 F.3d 970, 977 (9th Cir. 1999).

ORDER – 7

because the Committee's decision was objectively correct such that a conflict of interest would not matter.

The court concludes that Mr. Boyd has failed to state a claim because Section 1132(a)(2) does not confer a private cause of action in these circumstances. Section 1132(a)(2) provides that a plan participant has standing to bring a cause of action to hold a fiduciary personally liable for breach of his or her duties under the Act. 29 U.S.C. § 1132(a)(2) (citing 29 U.S.C. § 1109). However, a participant may only bring such a claim where he or she acts as a representative of the plan with recovery inuring to the plan as a whole. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985); Sokol v. Bernstein, 803 F.2d 532, 536 (9th Cir. 1986). Thus, Mr. Boyd may not proceed individually for his personal benefit or for the other remedies he seeks under this provision.

Mr. Boyd's cause of action also fails under 29 U.S.C. § 1132(a)(3) ("Section 1132(a)(3)"). A participant may bring a purely individual action for breach of fiduciary duty under Section 1132(a)(3), but such a cause of action is only available when no other provision of ERISA will provide an adequate remedy for the harm alleged. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474-75 (9th Cir. 1997) (upholding summary judgment dismissal of Section 1132(a)(3) claim where plaintiff won judgment on Section 1132(a)(1) claim in the same action). Because Mr. Boyd already has an adequate remedy under Section 1132(a)(1)(B), he does not have an additional claim under Section 1132(a)(3). Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) ( recognizing that Section 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . that runs directly to the injured beneficiary").

ORDER – 8

Moreover, the court considers Mr. Boyd's conflict of interest allegation as necessarily part of any ruling as to his first claim under Section 1132(a)(1)(B) and not a separate ground for relief. That is, where an ERISA plan grants discretion to a fiduciary, as here, the standard of review upon which the court decides a claim under Section 1132(a)(1)(B) turns entirely on the presence or absence of a conflict of interest. Jordan, 370 F.3d at 874-76 (noting that district court must decide whether to review denial of benefits de novo or for abuse of discretion based on burden shifting scheme to show existence of conflict of interest). A determination of whether a serious conflict of interest exists requires the court to consider facts that are not yet before it.

In sum, the court concludes that Mr. Boyd fails to state a cause of action under either Section 1132(a)(2) or Section 1132(a)(3), and therefore the court grants Defendants' motion as to Mr. Boyd's second claim.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. # 15).

Dated this 7th day of March, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 9