UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BYRON BOYD,

              Plaintiff,

    v.

UNITED TRANSPORTATION UNION
INSURANCE ASSOCIATION, et al.,

              Defendants.

CASE NO. C05-1413JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 54, 55).  For the reasons stated in this order, the court DENIES Plaintiff's motion for summary judgment (Dkt. # 54) and DENIES Defendants' motion for summary judgment (Dkt. # 55).

## II.  BACKGROUND

Plaintiff Byron Boyd was an employee of the United Transportation Union ("UTU") since 1969.  He was president of the UTU from 2001 to 2004.  Mr. Boyd was medically disqualified from his position in 2004, suffering from hypertension, diabetes, high cholesterol, arrhythmia, and other stress-related health issues.   He subsequently sought disability retirement benefits.  The parties do not dispute Mr. Boyd's underlying

ORDER – 1

disability or medical disqualification from his job.  The only dispute is whether Mr. Boyd was properly excluded from receiving disability retirement benefits because his disability was due to injury incurred while he was engaged in a criminal enterprise.

**A.     Mr. Boyd's Involvement in the Criminal Conspiracy**

On September 12, 2003, a grand jury indicted Mr. Boyd for crimes including mail fraud, wire fraud, racketeering, bribery, and embezzlement.  On March 11, 2004, Mr. Boyd plead guilty to Count Two of the Superseding Indictment:  RICO Conspiracy – 18 U.S.C. § 1962(d).  See Heekin Decl., Ex. 5 (Superseding Indictment).

The conspiracy began in 1994 and continued through August 2003, generating illegal income for Mr. Boyd and his co-conspirators.  See Monaco Decl., Ex. A (Boyd Plea Agreement) at 11-12.  Mr. Boyd conspired with others to dominate and control the UTU and its designated legal counsel ("DLC") program through the commission of various crimes.  In exchange for significant cash payments, Mr. Boyd and his co-conspirators appointed attorneys as designated counsel.  Mr. Boyd and his co-conspirators used the illegal proceeds for union campaigns and personal use.  Plaintiff does not dispute that Mr. Boyd's involvement in the criminal conspiracy constituted a criminal enterprise.

**B.     Mr. Boyd's Disability**

On February 18, 2003, Mr. Boyd's doctor, Dr. Mitchell A. Karton, observed that Mr. Boyd was considering leaving work because of his various health problems and the excessive stress of his position.  On March 4, 2004, and March 9, 2004, Dr. Karton wrote letters to the UTU recommending that Mr. Boyd be placed on permanent and total disability because work-related stress and travel were adversely affecting his blood pressure, diabetes, cholesterol, and heart disease.  The doctor did not mention the criminal conspiracy or indictment.

ORDER – 2

On March 10, 2004, Mr. Boyd ceased employment with the UTU after being medically disqualified from his job.[1]  Mr. Boyd sought disability benefits from the Railroad Retirement Board ("RRB"), a prerequisite under Section 1.18 of the Plan to receiving disability benefits.  The RRB granted disability status to Mr. Boyd as of March 10, 2004.  Compl., Ex. D (3/25/2004 Letter from RRB).  The RRB decision determined Mr. Boyd's right to a disability retirement benefit under the UTU Plan.  See Compl., Ex. A (Plan) at § 1.18.  The parties do not dispute the existence of Mr. Boyd's disability.

**C.   Pension Plan Disability Benefit**

As part of Mr. Boyd's employment with the UTU he was eligible for a disability benefit under the UTU's Pension Plan (the "Plan").  Mr. Boyd received a copy of the Plan, as well as a summary plan description ("SPD"), which set forth disability benefit requirements.  See Compl. ¶ 9, Exs. A, B.  The SPD described the following criminal enterprise exclusion which applied to the Plan's disability retirement benefit:

> You will be eligible to receive a Disability Retirement Benefit if you have completed at least 10 Years of Service and you become disabled, provided that your disability is not due to a deliberate self-inflicted injury or injury incurred while you were engaged in a willful criminal enterprise.

Id., Ex. B (Summary Plan Description) at 2.  The Plan language itself contained a different and broader description of the criminal activity exclusion for injuries "contracted, suffered, or incurred" while the Plan participant was engaged in a willful criminal enterprise.  The UTU Pension Administrative Committee (the "Committee ") applied the language of the Plan in evaluating and denying Mr. Boyd's claim.  It

---

[1] The order and timing of these events is remarkable.  On March 4, 2006, and March 9, 2006, Mr. Boyd's doctor advised the UTU to put Mr. Boyd on permanent disability status.  On March 10, 2006, the UTU medically disqualified him from his job, which entitled him to a disability retirement benefit.  On March 11, 2006, he signed a plea agreement which disqualified him from future union employment and resulted in a prison sentence.  This sequence of events allowed Mr. Boyd to collect a disability retirement benefit for a job he was ineligible to hold because of his own criminal activities.

ORDER – 3

determined that Mr. Boyd had engaged in a criminal enterprise over a period of years, and that he "probably contracted and/or incurred [his health] condition(s)" while he was engaged in a willful criminal enterprise.  Compl., Ex. H.  The court previously concluded that the language in the Plan and the SPD were materially different, and that the Committee erred when it did not construe Mr. Boyd's claim under the more favorable of the two documents, the SPD.  See Mar. 7, 2006 order at 6-7 (Dkt. # 30).

On April 14, 2006, the parties stipulated to de novo review of the Committee's decision to deny Mr. Boyd disability retirement benefits.  Joint Stipulation ¶ 1 (Dkt. # 37).

### III.  ANALYSIS

Pursuant to the parties' stipulation, the court reviews de novo the plan administrator's decision to deny benefits.  Tremain v. Bell Indus., 196 F.3d 970, 978 (9th Cir. 1999).  The court may hear evidence outside the administrative record where circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review.  See, e.g., Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943-44 (9th Cir. 1995).  In conducting a review of an administrator's decision to deny benefits, the district court may decide the case by summary judgment if there are no genuine issues of material fact.  Tremain, 196 F.3d at 978.  Where genuine issues of material fact regarding the administrator's decision to deny benefits are present, summary judgment is inappropriate and factual findings are necessary.  See id. (reversing for factual determination regarding employee's status under de novo standard of review).

In examining these motions for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party

ORDER – 4

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.    Mr. Boyd Engaged in a Willful Criminal Enterprise Through August 2003.**

Mr. Boyd first argues that the disability retirement benefits exclusion cannot apply because his criminal actions ended in 2001, and his injuries were not charted until 2003. The SPD contains a disability retirement benefits exclusion for disabilities due to deliberate self-inflicted injury or injury incurred while engaged in a willful criminal enterprise.  The parties disagree over whether this exclusion is applicable to Mr. Boyd. Mr. Boyd argues that the willful criminal enterprise exclusion is not applicable in his case because the specific acts to which he pled guilty occurred between 1998 and 2001.  Dr. Karton did not begin charting Mr. Boyd's health problems and work-related stress issues until February 2003.  Thus, Mr. Boyd urges that "several years" separate his crimes from his disability, and the criminal enterprise exclusion is therefore not applicable to him. See Pl.'s Mot. for S.J. at 8.  This argument is without merit.

The parties do not dispute the facts to which Mr. Boyd pled guilty, or the dates in Mr. Boyd's plea agreement.  In his plea agreement, Mr. Boyd admitted to the illegal solicitation and acceptance of cash payments from 1994 through August 2003.  See Monaco Decl., Ex. A (Boyd Plea Agreement) at 12.  The illegal payments were used for his union campaigns and personal use.  Mr. Boyd attempts to distinguish individual acts of his conspiracy in order to deny a temporal connection between his disability and his criminal conspiracy and conviction.  In light of his plea agreement, however, there is no basis for parsing the individual acts of the conspiracy.  Mr. Boyd pled guilty to a long-running criminal conspiracy, rather than individual criminal acts.  Nevertheless, in spite of the fact that he pled guilty to accepting cash payments through August 2003, he asks

ORDER – 5

that only specific acts listed in the indictment be considered.  He refers to these as the "overt acts . . . to which he pled guilty . . ."  See Pl.'s Mot. for S.J. at 8.

The court cannot disregard the nature of Mr. Boyd's plea agreement and the admitted facts.  Mr. Boyd pled guilty to accepting illegal payments through August 2003.  See Monaco Decl., Ex. A (Boyd Plea Agreement) at 12.  His argument is further undermined by the fact that he admitted to funding his 2003 campaign with illegally accepted funds, and pled guilty to conspiracy charges for his actions through 2003.  Id.  The parties do not dispute that Mr. Boyd's criminal actions constitute a willful criminal enterprise, and the court will not disregard facts that show a conspiracy through at least August 2003.  The court concludes as a matter of law that Mr. Boyd engaged in a willful criminal enterprise through at least August 2003, as admitted in his plea agreement.[2]

The parties do not dispute the substantial overlap between Mr. Boyd's serious health problems and the criminal enterprise detailed in his plea agreement.  Dr. Karton's chart notes indicate that Mr. Boyd's health problems were ongoing throughout 2003.  Dr. Karton ultimately recommended that Mr. Boyd be placed on total disability on March 4, 2004.  Heekin Decl., Ex. 2 (Karton notes); Ex. 3 (March 4, 2004 Karton Letter).  The reasons given for placing Mr. Boyd on total disability on March 4, 2004, are substantially identical as those listed in Dr. Karton's February 18, 2003 chart notes.  Id., Ex. 2 (Feb. 18, 2003 chart notes).  Little appears to have changed except for Mr. Boyd's increased work-related stress, which likely increased as a result of his indictment for racketeering, fraud, and conspiracy.

Dr. Karton's recommendation that Mr. Boyd be placed on total disability was the result of a one-year observation of his declining health and increased stress.  During this period Mr. Boyd engaged in a criminal conspiracy and was indicted on a variety of

---

[2] The court's determination that Mr. Boyd's criminal enterprise continued through at least August 2003 is not a determination that it ended in August 2003.

ORDER – 6

criminal charges.  The court rejects Plaintiff's argument that he was not engaging in criminal acts (or their aftermath) while his health was deteriorating.  The court concludes that a temporal relationship existed between Mr. Boyd's health problems and the criminal conspiracy.

## B.     The Plan Excludes Disability Due To Injury Incurred While Engaged in a Criminal Enterprise.

Mr. Boyd urges the court to find that even if a temporal connection exists between his disability and his "willful criminal enterprise," he is entitled to disability benefits because more than a temporal connection is required.  Plaintiff urges that the SPD's language requires a "causal connection," not merely a temporal one.  See Pl.'s Mot. for S.J. at 9.  The Defendants proffer a different construction, framing the issue as "whether Mr. Boyd's disability was 'incurred while [he was] engaged in a willful criminal enterprise.'"  See Defs.' Mot. for S.J. at 8.

Defendants urge the court to apply the criminal enterprise exclusion because Mr. Boyd's disability arose at the same time he was engaged in the conspiracy.  Defendants ask the court not to consider any causal relationship (or lack thereof), but to find that the exclusion applies because the disabling injuries and the criminal conspiracy occurred at the same time.  Plaintiff urge the court not to apply the criminal enterprise exclusion, alleging that the conspiracy and Mr. Boyd's disability are not causally related.  Plaintiff urges that a causal connection is required under a fair reading of the SPD provision.

### 1.     The Plan entitles Mr. Boyd to a disability benefit unless his disability is due to injury incurred while engaged in a willful criminal enterprise.

The court interprets terms in ERISA plans "in an ordinary and popular sense as would a [person] of average intelligence and experience."  Padfield v. AIG Life. Ins. Co., 290 F.3d 1121, 1125 (9th Cir. 2002).  Because the Defendants do not dispute that Mr. Boyd was medically disqualified from his position because of a legitimate disability, the only issue before the court is whether Mr. Boyd should have been excluded from

ORDER – 7

receiving a disability benefit because of his participation in a willful criminal enterprise. The applicable provision reads as follows:

> You will be eligible to receive a Disability Retirement Benefit if you have completed at least 10 Years of Service and you become disabled, *provided that your disability is not due to a deliberate self-inflicted injury or injury incurred while you were engaged in a willful criminal enterprise.*

See Compl. ¶ 9, Ex. B (Summary Plan Description) at 2 (emphasis added).  The parties agree that Mr. Boyd is eligible for a disability retirement benefit so long as the disability "is not due to a deliberate self-inflicted injury or injury incurred while you were engaged in a willful criminal enterprise."  Id.  The parties agree that the "deliberate self-inflicted injury" provision is not applicable.  The parties dispute how the court should construe the remainder of the exclusion language.  Mr. Boyd urges he is entitled to a disability retirement benefit:

> provided that your disability is not due to a[n] ~~deliberate self-inflicted injury or~~ injury incurred while you were engaged in a willful criminal enterprise.

See Pl.'s Resp. to S.J. at 2.  Mr. Boyd argues that the provision excludes disability resulting from two kinds of injury: (a) deliberate self-inflicted *injury*, or (b) *injury* incurred while engaged in a willful criminal enterprise.  Mr. Boyd argues that the words "due to" link the two kinds of injury to the word "disability."  Thus, Mr. Boyd urges that the proper inquiry is whether his disability is due to injury incurred while he was engaged in a willful criminal enterprise.

Defendants urge a slightly different construction, excising the words "due to" from application to the second provision.  Defendants characterize Mr. Boyd's construction as an attempt to "engraft a causation requirement onto the criminal enterprise exclusion." Defs.' Opp. to S.J. at 6.  Defendants contend that the criminal enterprise exclusion should be read as follows, with Mr. Boyd being entitled to a disability retirement benefit:

> provided that your disability is not due to a deliberate self-inflicted injury ~~or~~ [and is not] ~~injury~~ incurred while you were engaged in a willful criminal enterprise.

ORDER – 8

See id. at 7.  Defendants present the question as whether Mr. Boyd's disability was "incurred while [he] was engaged in a willful criminal enterprise," and broadly construe the term "while" in a temporal sense.  Defendants conclude that "it is beyond question" that Mr. Boyd contracted his disability no later than February 2003 "while engaged in a willful criminal enterprise," because the events occurred at the same time, or at least overlap substantially.  Thus, Defendants conclude that Mr. Boyd "inarguably" was ineligible to receive a disability pension under the terms of the criminal enterprise exclusion.  Id.

The problem with the Defendants' proposed construction is that it requires the replacement of the word "or" with "and," and it ignores the presence of the words "due to," as they explicitly refer to the second type of injury.  Defendants' construction also reads out another important word, "injury," in order to arrive at language that supports Defendants' temporal construction.

This question of construction ultimately resolves on whether "due to" modifies one or both types of injury.  The court concludes that "due to" must modify both types of injury; Plaintiff's proposed reading is correct.  Without changing the meaning of the criminal enterprise exclusion, the court concludes that the exclusion is properly (and more clearly) read as follows:

> You will be eligible to receive a Disability Retirement Benefit if you have completed at least 10 Years of Service and you become disabled, provided that your disability is not due to (1) a deliberate self-inflicted injury; or (2) injury incurred while you were engaged in a willful criminal enterprise.

Accordingly, disability retirement benefits should be denied if Mr. Boyd's disability is due to injury incurred while he was engaged in a willful criminal enterprise.

ORDER – 9

**2.    The Plan entitles Mr. Boyd to a disability benefit unless his disability is due to injury *incurred while* he was engaged in a willful criminal enterprise.**

Mr. Boyd was engaged in a willful criminal enterprise through August 2003.  His disabling conditions were first identified in February 2003.  Defendants urge the court to conclude that Mr. Boyd's disability is therefore due to injury incurred *while* he was engaged in a willful criminal enterprise, because the injury occurred at the same time as Mr. Boyd was engaged in a willful criminal enterprise.  However, courts have almost uniformly refused to give such broad effect to "violation of law" provisions where there is no causal relationship between the injury and the denial of coverage.

The criminal enterprise exclusion in this case is essentially a "violation of law" provision, excusing liability where the insured is injured "while violating the law" or "while he was engaged in any violation of law."  Courts have limited such exclusions to circumstances where the violation has some causal relationship to the harm.  See, e.g., Minnesota Life Ins. Co. v. Scott, 330 F. Supp. 2d 661 (E.D. Va. 2004) (holding that crime exclusion in accidental death policy required that death result from participation or attempted participation in crime); Reynolds v. Life & C. Ins. Co., 164 S.E. 602, 603 (S.C. 1932) (holding that to exclude recovery for injury or death "while committing some act in violation of law," direct causative connection between such act and death or injury must be shown).  Defendants fail to cite law to the contrary.

Federal courts have followed these principles in ERISA cases.  E.g., Sisters of the Third Order v. Group Health Ben. Tr., 901 F.2d 1369, 1372 (7th Cir. 1990) (holding that exclusion for injuries "while engaged in" illegal activity meant injuries "as a result of" illegal activity).  One treatise notes the basis for limiting such exclusions:

> [S]ince the consequence of applying the exclusion is that the benefits of the policy are essentially forfeited to the insurer, frequently depriving an innocent beneficiary of those funds, the courts have commonly required that there be some causal connection between the injury or death of the insured and the violation on which the insurer relies to avoid liability, so that the forfeiture is justified by the increase in risk which flows from the insured's

ORDER – 10

1    action; to avoid liability in the absence of a causal connection would work a
2    legal fraud.

3    Lee Russ & Thomas Segalia, <u>Couch on Insurance 3d</u> § 140:26 (West 2006).  The court

4    agrees with Mr. Boyd that a forfeiture of the disability retirement benefit absent a causal

5    connection would defeat his reasonable expectations under the plan.  It would be

6    unreasonable to apply the criminal enterprise exclusion if the evidence shows no relation

7    to the injuries or disability.  The court concludes that Mr. Boyd is entitled to his disability

8    benefit absent a causal relationship between his disability and his willful criminal

9    enterprise.

10         **3.     A reasonable jury could conclude that Mr. Boyd's disability was due to
11              injury incurred while he was engaged in a criminal conspiracy**.

12         No party contends that Mr. Boyd's underlying medical problems originated

13   because of his participation in the criminal conspiracy.[3]  Mr. Boyd's colon polyps were

14   not caused by fraud and his chondromalacia patella was not caused by racketeering.

15   However, a reasonable jury might determine that Mr. Boyd's injuries got worse because

16   of extraordinary stress related to his participation in a criminal conspiracy and indictment.

17   A reasonable jury might also conclude that certain injuries (e.g., hypertension, cardiac

18   arrhythmia) resulted from or were worsened by stress related to his criminal activities (or

19   the discovery of such activities by the authorities).

20         Mr. Boyd's health deteriorated throughout 2003.  Dr. Karton's letters and medical

21   charts reference an "extraordinary amount of job-related stress."  Dr. Karton notes that

22   the stress is having a adverse affect on Mr. Boyd.  <u>See</u>, <u>e.g.</u>, Heekin Decl., Ex. 4 (March

23   9, 2004 Karton Letter).  Dr. Karton also notes other aspects of Mr. Boyd's job that make

24   it difficult to control his health problems, but fails to mention indictment or crime related

25

26   _____

27         [3] Mr. Boyd's underlying medical problems include hypertension, non
28   insulin-dependent diabetes, high cholesterol, cardiac arrhythmia, degenerative joint
     disease, chronic chondromalacia patella, and colonic polyps.

ORDER – 11

stress.  Taking the facts in the light most favorable to the Defendants, a reasonable jury might conclude that Mr. Boyd's deteriorating health resulted from his participation in a criminal conspiracy.  A reasonable jury might conclude that the "extraordinary amount of job-related stress" Mr. Boyd experienced directly resulted from his willful criminal enterprise and subsequent indictment, plea negotiations, and future in prison.

Material questions of fact surround the extent of Mr. Boyd's criminal conspiracy, the duration of his participation in the criminal enterprise, and the extent to which his deteriorating health is attributable to "injury" incurred during the course of his participation in a willful criminal enterprise.  A reasonable jury could find that Mr. Boyd's criminal enterprise, its discovery, and the resulting consequences were the cause of his increased job-related stress, declining health, and disability.

These are issues of fact that may not be resolved on summary judgment. Accordingly, the court DENIES the Plaintiff's motion for summary judgment (Dkt. # 54) and DENIES the Defendants' motion for summary judgment (Dkt. # 55).  The jury will decide whether Mr. Boyd's disability was due to an injury incurred while he was involved in a criminal enterprise.

## IV.  CONCLUSION

For the reasons stated in this order Plaintiff's motion for summary judgment (Dkt. # 54) is DENIED.  Defendants' motion for summary judgment (Dkt. # 55) is also DENIED.

Dated this 11th day of August, 2006.


_____
JAMES L. ROBART
United States District Judge

ORDER – 12