1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BYRON BOYD,

              Plaintiff,

    v.

UNITED TRANSPORTATION UNION
INSURANCE ASSOCIATION, et al.,

              Defendants.

CASE NO. C05-1413JLR

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

      This matter came before the court for a bench trial on September 21, 2006.  Based on the testimony and the parties' evidence, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.     Plaintiff Byron Boyd worked for the United Transportation Union ("UTU") from 1969 to 2004.  He served as the UTU's International President for the last few years of his employment.  The job was stressful to Mr. Boyd and required him to travel extensively.

ORDER – 1

2.      Mr. Boyd participated in the UTU Pension Plan ("Plan").  Defendant UTU
        Pension Administrative Committee (the "Committee") administers the Plan.  The
        Plan and the Summary Plan Description ("SPD") set out the requirements for
        receiving disability retirement benefits.

3.      The Committee, comprised of Defendant Paul Thompson, Defendant Rick
        Marceau, and one other UTU officer, denied Mr. Boyd's claim for disability
        retirement benefits.  The Committee based its decision on a Plan provision that, in
        certain circumstances, excludes eligibility for participants who engage in a willful
        criminal enterprise.

4.      Beginning sometime in 2000 or earlier, Mr. Boyd visited Doctor Mitchell Karton
        for regular medical check-ups.  Dr. Karton and Mr. Boyd discussed, on various
        occasions, how Mr. Boyd's stress and frequent travel impacted his ability to keep
        particular health issues, such as obesity, diabetes, and hypertension, under control.
        Dr. Karton warned Mr. Boyd that his lifestyle put him at a higher risk of heart
        attack, stroke, and kidney failure.

5.      At his yearly medical check-up on February 18, 2003, Mr. Boyd reported that
        stress at work had been excessive and that he had begun to think about whether he
        wanted to continue.  Among other things, Dr. Karton assessed Mr. Boyd's
        hypertension, chondromalacia patella (chronic knee pain), obesity, non insulin-
        dependent diabetes, and high cholesterol.  Dr. Karton recorded Mr. Boyd's
        conditions as either stable, controlled by medication or diet, or requiring more
        testing.

6.      A month later, Mr. Boyd complained to Dr. Karton that work was very stressful
        and that he was having trouble sleeping.

ORDER – 2

7.    For the remainder of 2003, Mr. Boyd saw Dr. Karton for various ailments, including sinus pain, eczema, and ongoing blood pressure monitoring.  Dr. Karton did not record anything related to Mr. Boyd's stress during this time period.

8.    On September 12, 2003, a grand jury in the United States District Court for the Southern District of Texas issued an indictment against Mr. Boyd for a multi-year criminal conspiracy beginning as early as 1994 and ending sometime in 2003.  The indictment charged Mr. Boyd with mail and wire fraud, interstate transportation in aid of racketeering, bribery, embezzlement from a labor organization, and various other crimes.

9.    Dr. Karton could not recall when he learned of the criminal indictment, although it was sometime later than September 2003.  He would have included such an event in Mr. Boyd's medical chart only if medically necessary.

10.   At his yearly check-up on February 11, 2004, Mr. Boyd reported no major health-related complaints.  Dr. Karton's chart notes for this appointment do not contain any mention of the grand jury indictment or any work-related stress.

11.   On March 2, 2004, the UTU Executive Board voted to suspend Mr. Boyd from his position without pay, unless a jury found him not guilty of the pending criminal charges.  Mr. Thompson, UTU's then Assistant President, assumed Mr. Boyd's position of International President.  It is unclear when or if Mr. Boyd received a copy of a letter announcing the UTU Executive Board's decision.

12.   On March 4, 2004, Mr. Boyd called Dr. Karton complaining of an extraordinary amount of stress.  He reported having trouble sleeping and difficulty in following his diet and exercise plan.  Mr. Boyd told his doctor that his work-related stress made it impossible for him to lead a healthy lifestyle.  Dr. Karton did not know at the time that the UTU Executive Board had suspended Mr. Boyd from his job.

ORDER – 3

13.   The same day, at Mr. Boyd's request, Dr. Karton wrote a letter to the UTU recommending that the union place Mr. Boyd on permanent and total disability so that his health would not further deteriorate.  Dr. Karton did not perform any additional medical tests upon receiving Mr. Boyd's telephone call.  The letter referenced Mr. Boyd's hypertension, diabetes, high cholesterol, a prior cardiac arrhythmia, degenerative joint disease, chronic knee pain, and colonic polyps.

14.   Dr. Karton submitted another similar letter as well as copies of Mr. Boyd's medical records to UTU on March 9, 2004.

15.   Based on Dr. Karton's submission, Mr. Thompson wrote Mr. Boyd on March 10, 2004 to inform him that he was medically disqualified from the job.  Mr. Thompson recommended that Mr. Boyd contact the Railroad Retirement Board ("RRB") regarding his eligibility for disability benefits.

16.   The next day, on March 11, 2004, Mr. Boyd pled guilty to criminal charges including mail and wire fraud, racketeering, bribery, and embezzlement.

17.   Shortly thereafter, the RRB granted disability status to Mr. Boyd.

18.   Mr. Boyd submitted his application for disability retirement benefits to the Committee on June 28, 2004.  On November 11, 2004, the Committee denied Mr. Boyd any disability-related benefits, but awarded Mr. Boyd a lump sum of $423,409.00 in early retirement benefits.

ORDER – 4

1

**CONCLUSIONS OF LAW**

2      1.    The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3      2.    Mr. Boyd seeks the court's review of the Committee's denial of disability

4            retirement benefits under the civil enforcement provision of the Employee

5            Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  The parties have

6            stipulated to a de novo review of Mr. Boyd's claim.[1]

7      3.    The court previously ruled that the Committee should have considered Mr. Boyd's

8            application under the SPD rather than the Plan, because the SPD contains a
9
             narrower criminal enterprise exemption, which is more favorable to Plan
10
             participants (Dkt. ## 30, 74).  The relevant SPD provision provides:
11
                     You will be eligible to receive a Disability Retirement Benefit if
12                   you have completed at least 10 Years of Service and you become
                     disabled, provided that your disability is not due to a deliberate
13                   self-inflicted injury or injury incurred while you were engaged
                     in a willful criminal enterprise.
14

15           Ex. 2.  The parties do not dispute that Mr. Boyd worked for over ten years for the

16           UTU, that he became disabled, and that he engaged in a willful criminal

17           enterprise. The parties strongly dispute whether there exists a causal relationship

18           between Mr. Boyd's criminal enterprise and his disability.[2]

19

20

21

22

23

    ───────────────────

24          [1]Under de novo review, the court typically considers only the evidence that was before the
    ERISA Plan administrator (here, the Committee).  See Mongeluzo v. Baxter Travenol Disability
25  Benefit Plan, 46 F.3d 938, 943-44 (9th Cir. 1995).  At trial, Defendants moved to admit the
    testimony of Dr. Karton.  For the reasons stated on the record, the court exercised its discretion
26  to admit the testimony for limited purposes.

27
            [2]The court previously held that the SPD provision requires a causal connection between
28  Mr. Boyd's disability and the criminal enterprise (Dkt. # 74).

    ORDER – 5

4.     Defendants bear the burden to show that Mr. Boyd's disability falls within the criminal enterprise exception.  See Aetna Ins. Co. of Hartford v. Kent, 530 P.2d 672, 675 (Wash. Ct. App.) (holding that the insurer bears the burden of proving applicability of a plan's exclusionary provision), rev'd on other grounds by, 540 P.2d 1383 (Wash. 1975)[3]; cf McGee v Equicor-Equitable HCA Corp. 953 F.2d 1192, 1205 (10th Cir. 1992) (interpreting ERISA plan and concluding that "[i]t is a basic rule of insurance law that . . . the insurer must prove facts that bring a loss within an exclusionary clause of the policy.")

5.     Defendants have failed to meet their burden to show causation.  There is no evidence that Mr. Boyd's criminal acts caused any particular medical condition.  Defendants do not suggest as much; rather, Defendants contend that Mr. Boyd's criminal acts caused his preexisting medical conditions to deteriorate to the point of total disability.

6.     There is insufficient evidence to indicate that Mr. Boyd's preexisting conditions deteriorated as a result of his criminal acts.  In fact, the evidence shows that the majority (if not all) of Mr. Boyd's preexisting conditions remained stable from February 2003 to February 2004.  By February 2004, Mr. Boyd reported that he had "no major complaints."  A month later, when Dr. Karton recommended that UTU place Mr. Boyd on permanent disability, his *medical* opinion had not changed from the year prior; rather, he testified that he could have written the very same letter in February of 2003.  The catalyst for the March 2004 letters was Mr. Boyd's self-diagnosis that he could no longer handle his stress.  Defendants' theory that Mr. Boyd's stress interacted with and aggravated his preexisting condition to the point of disability is insufficient to show causation.

---

[3]Because ERISA is silent as to who bears the burden of proof, the court borrows from state law.  See Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1125 (9th Cir. 2002) (reasoning that courts interpreting ERISA policies may borrow from state law where appropriate).

ORDER – 6

7.    Nevertheless, Defendants ask the court to infer from the circumstances that Mr. Boyd's criminal activities must have caused his disability, because no other explanation is probable.  Defendants note that the UTU Executive Committee had already suspended Mr. Boyd two days before his telephone call to Dr. Karton.  From this fact, Defendants argue that the court can rule out legitimate work-related events as the cause of Mr. Boyd's increased stress.  Defendants suggest that the only remaining ingredient that could have caused Mr. Boyd's heightened stress on March 4, 2004 was his looming criminal charges or the pressure to plead guilty.  First, Defendants do not provide any evidence that work-related stress vanishes the moment an employee leaves his job – or, for that matter, that stress is divisble.  In any case, the court notes that Mr. Boyd's criminal enterprise *ceased* sometime in mid to late 2003.  Several months later, in February 2004, Mr. Boyd reported "no major complaints" to Dr. Karton even though he was still under indictment.  A few weeks later, Mr. Boyd reported insurmountable stress.  The most likely inference that can be drawn between the timing of Mr. Boyd's telephone call and his suspension and guilty plea is that he sought to recover benefits under the Plan before he lost his job.  The same series of events is insufficient, however, to infer a causal relationship between Mr. Boyd's multi-year criminal enterprise and his disability.

8.    The court concludes that Mr. Boyd is entitled to recover disability retirement benefits under the SPD.  Mr. Boyd has not, however, satisfied the court that Defendants' owe him an amount over and above what Barbara Blackburn, the UTU's pension administrator of over twenty years, calculated.  See McMackins v. Monsanto Co. Salaried Employees' Pension Plan, 98 F.Supp. 2d 1073, 1081 (E.D. Mo. 2000) (holding that ERISA plaintiff bears burden to establish amount owed).

ORDER – 7

The court therefore concludes that Mr. Boyd is entitled to receive disability retirement benefits in the amount of $287,007.

9.   Finally, the court declines Mr. Boyd's request to award him pre-judgment interest at a rate of 12%.  There is insufficient evidence of any ill will or bad faith on the part of the Committee to support a pre-judgment interest award.  See Landwehr v. DuPree, 72 F.3d 726, 739 (9th Cir. 1995).  Instead, the evidence points to a genuine dispute about the meaning of the criminal enterprise exemption. Accordingly, the court applies the post-judgment interest rate of 5.03% pursuant to 28 U.S.C. § 1961(a).

### ORDER

Based on the foregoing findings of fact and conclusions of law, the court orders as follows:

1.   Mr. Boyd shall recover $287,007 plus post-judgment interest at a rate of 5.03% to run from the date of judgment until paid in full.

2.   If Mr. Boyd wishes to pursue his request for attorneys' fees and costs, he must file a motion pursuant to Fed. R. Civ. P. 54(d).

3.   The clerk shall enter judgment consistent with this order.

DATED this 17th day of October, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 8