UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BYRON BOYD,

        Plaintiff,

    v.

UNITED TRANSPORTATION UNION INSURANCE ASSOCIATION, et al.,

        Defendants.

CASE NO. C05-1413JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff Byron Boyd's motion for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1) (Dkt. # 88). The court has considered the papers filed in connection with the motion and finds the matter appropriate for disposition without oral argument. The court GRANTS Mr. Boyd's motion for attorneys' fees and costs, but reduces the award for the reasons stated below.

## II. BACKGROUND & ANALYSIS

At a bench trial, Mr. Boyd successfully argued his eligibility for disability retirement benefits under a plan governed by the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1001-1461. At this stage of the proceedings, the court and the parties are familiar with the facts of the case. As such, the court addresses

ORDER – 1

only the relevant issues bearing on attorneys' fees and costs and incorporates by reference prior orders setting forth the particulars of the dispute. See August 11, 2006 Order Den. Summ. J. (Dkt. # 74); October 17, 2006 Findings & Concl. (Dkt. # 86).

### A. Mr. Boyd is Entitled to Attorneys' Fees and Costs

The parties agree that an ERISA plan participant ordinarily recovers attorneys' fees and costs "unless circumstances would render such an award unjust." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984) (internal citation and quotation omitted). The parties also agree that the court evaluates whether to award attorneys' fees and costs under the five-factor test announced in Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980) (construing section 1132 (g)(1)). The factors include:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Id. at 453. The court evaluates each factor in turn.

### 1. Culpability or Bad Faith

The court concludes that the first factor does not weigh in favor of a fee award. Defendants correctly note that the court previously found insufficient evidence of bad faith in the context of considering whether to award pre-judgment interest (Dkt. # 86, ¶ 9). Although the court disagrees that its prior finding is conclusive on the instant question, the court finds unavailing Mr. Boyd's contention that Defendants are culpable because, in essence, they defended this lawsuit. In any event, because bad faith is not a prerequisite to a fee award, Smith, 746 F.2d at 590, the court turns to the remaining factors.

ORDER – 2

Case 2:05-cv-01413-JLR   Document 96   Filed 01/10/07   Page 3 of 9

## 2. Ability to Pay

Defendants concede that they have the ability to satisfy an award of fees. The court therefore finds that this factor favors Mr. Boyd's request.

## 3. Deterrent Effect of Awarding Fees

The court concludes that the third factor weighs in favor of granting Mr. Boyd his attorneys' fees and costs. Defendants contend that there is no deterrent effect gained in awarding fees and costs in this case because the plan administrator (the UTU Committee) has eliminated all disability pensions, and therefore, eliminated the possibility that the present circumstances will recur. The third Hummell factor, however, does not rest on whether an award of attorneys' fees and costs will deter the UTU Committee from denying benefits in the future, but whether, on the whole, "others" faced with "similar circumstances" would act differently. 634 F.2d at 453. On this question, the court concludes that an award of fees could deter other plan administrators from reading exclusionary provisions too broadly. Further, an award in this case may force administrators to either reconcile inconsistencies between plan language and summary plan descriptions, or simply apply the provision that is more favorable to the employee.

## 4. Significance of the Legal Question

The court concludes that the fourth Hummell factor favors a fee award. Under this factor, the court considers the significance of the legal question involved or the extent to which the party's suit benefits other participants of the ERISA plan. Mr. Boyd does not contend that his suit benefits other plan participants. He argues, rather, that his case required resolution of a significant legal question, namely, whether the UTU Committee properly denied him benefits under the plan's "violation of law" clause. On a summary judgment motion, the court ruled whether, as a matter of law, the exclusionary provision required a causal connection between an employee's criminal activity and his or her medical condition. The court agrees with Defendants that the court's interpretation of the

ORDER – 3

provision is not likely to have broad application to coverage disputes in the ERISA context. Regardless, the very fact that the issue presented a unique legal question without any on-point authority tends to suggest that the issue is "significant." Cf. Duggan v. Hobbs, 99 F.3d 307, 314 (9th Cir. 1996) (noting that an issue of first impression suggests a significant legal issue for purposes of evaluating the fourth Hummell factor). Accordingly, the court finds that the fourth factor favors a fee award.

### 5. Relative Merit of the Parties' Positions

As to the final factor, the court finds that Mr. Boyd's success in this lawsuit weighs in favor of an award of attorneys' fees. See Smith, 746 F.2d at 590 ("The fifth Hummell factor . . . is in the final analysis, the result obtained by the plaintiff.") Defendants concede as much, although they urge the court to assign less weight to this factor given the factual disputes that necessitated trial.

Regardless of the weight assigned to this final factor, the court concludes that Mr. Boyd is entitled to his attorneys' fees and costs. All Hummell factors, save for the first, favor an award. Further, no unusual circumstances in this case would make an award of attorneys' fees and costs unjust.[1] The court reaches its conclusion mindful of the remedial purpose of ERISA and the goal of the attorneys' fees provision in securing access to the courts. See Smith, 746 F.2d at 589.

### B. The Court Awards Mr. Boyd $91,359.25 in Attorneys' Fees and $ 872.28 in Costs.

Mr. Boyd requests $99,085.25 in attorneys' fees and $872.28 in costs. Although Defendants strongly dispute the reasonableness of the attorneys' fees request, they do not oppose an award of costs. The court therefore grants Mr. Boyd's request for costs in the

---

[1]The court finds unavailing Defendants' contention that because the court found certain facts in this case "remarkable," see August 11, 2006 Order (Dkt. # 74 at 3 n.1), that Mr. Boyd should not recover his attorneys' fees. That this case is unique does not change the fact that Mr. Boyd prevailed on the central question before the court - i.e., his eligibility for disability retirement benefits.

ORDER – 4

amount of $872.28 and turns to the question of attorneys' fees.

In calculating reasonable attorneys' fees under 29 U.S.C. § 1132(g)(1), the court uses a hybrid lodestar/multiplier approach. McElwaine v. US West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The court arrives at the "lodestar" figure by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id. The court may then apply a "multiplier" to raise or lower this amount based on factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

### 1. Hourly Rate Charged

Defendants do not seriously contest the reasonableness of the hourly rates. They concede that Mr. Boyd's counsel, Katherine Heekin, has charged a reasonable rate of $195 and make no mention of the rate of $110 charged by Ms. Heekin's legal assitant, Lydia Yinger. Defendants also do not contest the rate of $120 charged by Sherri Hohman, a paralegal at Markowitz, Herbold, Glade & Mehlhaf ("Markowitz") – the firm that represented Mr. Boyd prior to Ms. Heekin.[2] As to the other rates, Defendants argue in passing that the Markowitz attorneys should charge Ms. Heekin's rate of $195 rather than rates spanning from $215 to $290. Although Defendants do not mention the attorneys by name, the court assumes that Defendants refer to the following attorneys' hourly rates: $290 for Kerry Shepherd and Lynn Nakamoto; $235 for Paul Bierly; and $215 for Charles Paternoster. Mr. Paternoster, who performed the majority of the work for Markowitz, has seven years of legal experience; the remaining attorneys are shareholders in the Markowitz firm with over fifteen years of experience each.

The court disagrees that the rates charged by the Markowitz attorneys are unreasonable. Mr. Boyd submits evidence that the attorneys' hourly rates are in line with

---

[2] Markowitz withdrew its representation upon discovering a potential conflict of interest in December 2005. Ms. Heekin substituted as counsel in late December 2005, just after Defendants' filed a motion to dismiss.

ORDER – 5

the rates charged by attorneys with similar levels of experience in Seattle.  LeMaster Decl. ¶¶ 1, 7, 8; see also Chalmers v. Los Angeles, 796 F.2d 1205, 1211 (9th Cir. 1985) (directing district courts to determine reasonableness based on the prevailing market rate from the community in which the lower court resides).  Defendants do not provide evidence to the contrary and their naked statement that the rates are too high is not persuasive.  Cf. United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (noting that defendants contesting fee award should not simply disagree with plaintiff's evidence, but should submit their own regarding the reasonableness of hourly rates).  The court finds that all of the above rates are well within the range of rates charged by attorneys and non-attorney staff in Seattle with commensurate levels of experience.  The court therefore turns to the question of hours expended.

**2.   Hours Expended**

In considering Mr. Boyd's fee request, the court excludes from the lodestar calculus those hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Here, Mr. Boyd seeks fees for the following number of hours expended by the following attorneys and non-attorney staff:

| | |
|---|---|
| Ms. Heekin | 358.5[3] |
| Ms. Yinger | 34.0 |
| Mr. Shepherd | 1.4 |
| Ms. Nakamoto | 8.3 |
| Mr. Bierly | 12.9 |
| Mr. Paternoster | 79.6 |
| Ms. Hohman | 2.2 |

---

[3]Ms. Heekin's hours include 12.4 hours expended in preparing Mr. Boyd's reply in support of his motion.  Supp. Heekin Decl. ¶¶ 4, 5.  For the same reason, the court has added 1.4 and 1.5 hours for Mr. Bierly and Mr. Paternoster, respectively.  Supp. Bierly Decl. ¶¶ 9, 10.

ORDER – 6

Defendants' primary contention is that the Markowitz firm added little to no value to the success of Mr. Boyd's litigation, and thus, the court should deny or severely limit any award of fees for the firm's work.  In support of this argument, Defendants cite the fact that the Markowitz attorneys filed only one pleading on behalf of Mr. Boyd and yet expended just over 100 hours of time, representing more than one-quarter of the fee request.  Defendants compare the output from the Markowitz firm to that of Ms. Heekin who defended two dispositive motions and prepared for and presented at trial.

The court agrees with Defendants that Ms. Heekin conducted the lion's share of work litigating Mr. Boyd's case; however, the fact that the Markowitz attorneys expended a significant number of hours at the outset does not necessarily mean the time expended was unreasonable.  In fact, the comparison between the Markowitz attorneys' expenditure of time and Ms. Heekin's merely indicates to the court that Ms. Heekin has requested a modest fee award, which the court applauds.  Further, in placing emphasis solely on the number of pleadings filed, Defendants overlook the Markowitz attorneys' efforts to procure a settlement in lieu of litigation and their time spent researching Mr. Boyd's claims.  Still, the court finds that the Markowitz attorneys' expended some excessive time in preparing one unsuccessful claim, conferencing with one another, and reviewing the administrative file.  The court concludes that a reduction of 12 hours at a blended rate of $258 is appropriate, reflecting a reduction in the amount of $3,096 from the total request.

Defendants also argue that Mr. Boyd's request includes hours expended that are redundant given that the Markowitz firm withdrew after spending several months on the case.  The court agrees in part that the hours expended include some duplicated effort.  For example, Ms. Heekin's substitution in late December 2005 required her to review Mr. Boyd's file, schedule additional client visits, review basic ERISA caselaw, and other preparatory work that the Markowitz firm had already conducted.  Compare Heekin Decl., Ex. A at 1, with, Bierly Decl., Ex 1 at 1.  On the other hand, Ms. Heekin previously worked for Markowitz prior to forming her own practice, which suggests that

ORDER – 7

the transition was much less cumbersome than a typical withdrawal and substitution. Indeed, Ms. Heekin attests that she trusted and relied on the research and memoranda that the Markowitz attorneys prepared and that, as a former employee of the firm, she was familiar with their general approach to cases. Supp. Heekin Decl. ¶¶ 2, 3.

The court concludes that 12 hours expended between the Markowitz firm and Ms. Heekin represent redundant or duplicated effort. Based on the court's review of a fair cross-section of billing entries and corresponding hourly rates, the court deducts $2,460 from Mr. Boyd's request, a reduction that Ms. Heekin and the Markowitz firm should share equally.

As an additional basis for reducing the fee request, Defendants argue that the court should deduct Ms. Heekin's hours spent on a discovery related motion (Dkt. # 40) and on a motion to amend (Dkt. # 42), both of which the court denied. Only the second relates to the pursuit of an unsuccessful claim, justifying a reduction in the lodestar amount. See Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995). By contrast, although the court denied the discovery-related motion, the court ultimately revisited the issue at trial where Mr. Boyd prevailed. The court therefore confines its deduction to 10 hours of Ms. Heekin's time and 2 hours of Ms. Yinger's time related to the motion to amend, resulting in an additional reduction of $2,170.

Lastly, the court declines to apply a multiplier to adjust the lodestar figure. Although Mr. Boyd mentions the Kerr factors that courts use in evaluating whether the amount warrants a multiplier, he does not detail their application to his case. In any event, the court finds that there is no justification for departing from the lodestar figure. See Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (applying presumption that lodestar amount is reasonable and that the multiplier is for rare and exceptional cases) (citations omitted).

ORDER – 8

### III.  CONCLUSION

For the reasons stated, the court GRANTS Mr. Boyd's motion (Dkt. # 88) and awards him reasonable attorneys fees in the amount of $91,359.25 and costs in the amount of $872.28.  The court directs the clerk to enter judgment consistent with this order.

Dated this 10th day of January, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 9